## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 3101 | **DATE** | 1/25/2001 |
| **CASE TITLE** | Great West Casualty Company vs. Marathon Oil Company, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
|---|---|---|
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____. Reply to answer brief due_____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ■ | Status hearing set for 2/15/01 at 9:30 A.M. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's Motion to Dismiss Amended Counterclaim [22-2] is denied. Plaintiff's Motion to Strike Amended Affirmative Defenses [22-1] is granted in part, and denied in part. A status hearing is set for 2/15/01 at 9:30 A.M. |
| (11) | ■ | [For further detail see order attached to the original minute order.] |

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 31 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 32 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| GREAT WEST CASUALTY COMPANY, a Nebraska Casualty Company, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 99 C 3101 |
| MARATON OIL COMPANY, an OH Corp., JEROME J. HOWE, Independent Administrator of the Estate of PAUL J. HOWE, Deceased, and HEIDENREICH TRUCKING, INC., an IL Corp., | ) ) ) ) ) ) | Honorable Judge Joan B. Gottschall  **DOCKETED** |
| Defendants. | ) | JAN 3 1 2001 |

## MEMORANDUM OPINION AND ORDER

Plaintiff Great West Casualty Company filed this diversity action for a declaratory judgment against defendant Marathon Oil Company, seeking a determination that Great West does not owe Marathon a duty to defend or indemnify Marathon in a civil suit filed by Paul J. Howe. Marathon's responsive pleadings included a counterclaim and five affirmative defenses.[1] Great West's motions currently before the court seek to dismiss Marathon's counterclaim and to strike Marathon's affirmative defenses. For the reasons set forth below, Great West's motion to dismiss is denied, and Great West's motion to strike is granted in part and denied in part.

### Background

The relevant facts of this case are essentially undisputed. The deceased, Paul J. Howe, was a truck driver employed by Heidenreich Trucking Company. Heidenreich and Marathon Oil

---

[1] Marathon has subsequently amended its counterclaims and affirmative defenses. The present motion deals with the most recent versions of these pleadings. All subsequent references to the counterclaim or affirmative defenses will refer to the amended counterclaim or the amended affirmative defenses.

Company were parties to a Terminal Access Agreement, permitting Heidenreich drivers to load and operate trucks at Marathon's terminals. Howe, while driving for Heidenreich at a Marathon terminal, was fatally injured when he was trapped between his truck and a steel gate. Howe had exited his truck to use a card reader to open the steel gate, and his truck rolled forward. Attempting to re-enter the truck to stop it, Howe was crushed between the truck and the gate. Howe's estate brought suit against only Marathon, alleging that Marathon was negligent in the maintenance and operation of its premises. The complaint alleged, inter alia, that Marathon was negligent by failing to have a card reader accessible to truck drivers without requiring them to exit their trucks, placing the gate and card reader at the bottom of an incline, failing to have a speed bump at the card reader, failing to have break-away gates, and failing to have warning signs and instructions posted. Marathon subsequently filed a third party complaint, naming as third party defendants Howe and Heidenreich, among others. The third party complaint alleged that Howe, and therefore Heidenreich vicariously, was negligent in failing to set the parking brake before exiting the vehicle. Marathon maintains that Howe's failure to set the parking brake was the real cause of the accident.

The Terminal Access Agreement between Marathon and Heidenreich contained a provision requiring Heidenreich to defend and indemnify Marathon for any claims "arising out of or in any way connected with the presence of [Heidenreich's] drivers at Marathon's terminals," except for claims "arising solely out of [Marathon's] negligence." (Pl.'s Memo. in Supp. of Mtns. at 10-11). In order to meet this obligation, Heidenreich had its insurer, Great West, name Marathon as an "additional insured" on its liability policy, which includes a Comprehensive General Liability ("CGL") part and a Comprehensive Auto Liability ("CAL") part. The

endorsement naming Marathon as an additional insured for the CAL part provides: "LIABILITY COVERAGE WHO IS AN INSURED is changed to include as an insured [Marathon] only if they are liable for the conduct of an insured shown in the WHO IS AN INSURED provisions and only to the extent of that liability." (Compl., Exh. B).[2]

Great West brought this action against Marathon seeking a declaration that it owed no duty to defend or indemnify Marathon in the tort suit brought by Howe's estate. Marathon filed a counterclaim and five affirmative defenses. In the counterclaim, as amended, Marathon seeks a declaration that Great West does owe a duty to defend and indemnify Marathon in the underlying tort suit. Great West has moved to dismiss the counterclaim and strike the affirmative defenses.

## Analysis

### I. Motion to Dismiss Marathon's Counterclaim

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). A court should dismiss a claim only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir. 1998) (citations omitted). The court must accept all well-pleaded factual allegations in the light most favorable to the plaintiff. *Colfax Corp. v. Illinois State Toll Highway Auth.*, 79 F.3d 631, 632 (7th Cir. 1996). Thus, for purposes of deciding this motion, the court will accept the factual allegations found in Marathon's counterclaim in the light most

---

[2] The corresponding additional insured endorsement for the CGL part similarly provides: "WHO IS AN INSURED . . . is changed to include as an insured [Marathon] but only to the extent of that liability arising out of your operations or premises owned by or rented to you, but only if they are liable for your conduct." (Compl., Exh. B).

3

favorable to Marathon.

Under Illinois law, where a motion to dismiss involves the interpretation of a contract the court must first determine whether the contract is ambiguous. *Quake Constr., Inc. v. American Airlines, Inc.*, 565 N.E.2d 990, 994 (Ill. 1990). In deciding whether the contract is ambiguous, the court "must construe the words of [the] contract in accordance with their usual, common and ordinary meaning." *Coral Chem. Co. v. Novamax Tech. Corp.*, No. 97 C 4358, 1997 WL 695660, at * 3 (N.D. Ill. Nov. 5, 1997) (internal quotation marks and citation omitted). If the relevant terms are susceptible to more than one reasonable interpretation, then the contract is ambiguous and the interpretation of the terms is a question of fact which cannot be resolved on a motion to dismiss. *Quake Constr.*, 565 N.E.2d at 994.

In the specific context of an insurer's duties to its insureds, courts have stated that the duty to defend is broader than the duty to indemnify. *American Country Ins. Co. v. Cline*, 722 N.E.2d 755, 764 (Ill. App. Ct. 1999). Thus, "even if an insurer ultimately may not be obligated to indemnify, if the allegations in a complaint state a cause of action that gives rise to the possibility of recovery under the policy, the insurer's duty to defend is called into play." *Id.* Where there is doubt regarding the duty to defend, it should be resolved in favor of the insured. *See id.* Finally, although Great West maintains otherwise, it is clear that the court may look beyond the underlying tort complaint to other pleadings or evidence suggesting that a duty to defend exists – such as Marathon's third party complaint. *See id.*; *West Bend Mutual Ins. Co. v. Sundance Homes, Inc.*, 606 N.E.2d 326, 328 (Ill. App. Ct. 1992)

In this case, the crux of the dispute lies in the interpretation of one sentence in Heidenreich's liability insurance policy issued by Great West. The principal argument advanced

4

by Great West in its motion to dismiss is that Heidenreich's liability policy covers Marathon as an additional insured only for claims in which Marathon is held vicariously liable for the conduct of Heidenreich. The key sentence is found in the additional insured endorsements. The additional insured endorsement for the CAL part reads: "WHO IS AN INSURED is changed to include as an insured [Marathon] only if they are liable for the conduct of an Insured shown in the WHO IS AN INSURED provisions and only to the extent of that liability." (Compl., Exh. B).[3] Great West argues that this language unambiguously limits coverage to cases of vicarious liability by providing that Marathon is an additional insured "only if they are liable for the conduct of [Heidenreich]" Great West goes on to argue that neither Howe's complaint, nor the third party complaint filed by Marathon, allege any facts suggesting that Marathon could possibly be held vicariously liable for the conduct of Heidenreich. At best, Great West argues, the allegations of the third party complaint suggest that Heidenreich and Marathon were joint tortfeasors, not that Marathon is vicariously liable for Heidenreich's negligence.

In response, Marathon contends that the language of the additional insured endorsement should be interpreted more broadly, providing coverage for any liability that *factually* results from Heidenreich's conduct. Marathon urges the court to employ a "but for" analysis: where the accident or liability would not have occurred but for the negligent conduct of Heidenreich, the policy provides coverage to Marathon.

Both parties cite Illinois cases interpreting similar additional insured endorsement

---

[3] The analogous language in the additional insured endorsement for the CGL part provides: "WHO IS AN INSURED . . . is changed to include as an insured [Marathon] but only to the extent of that liability arising out of your operations or premises owned by or rented to you, but only if they are liable for your conduct."

5

language under similar circumstances. Great West relies chiefly on *Cline*, 722 N.E.2d 755, and dicta in *American Country Ins. Co. v. Kraemer Bros., Inc.*, 699 N.E.2d 1056 (Ill. App. Ct. 1998). In both of these cases, the endorsement language provided: "The coverage afforded to the Additional Insured is solely limited to liability specifically resulting from the conduct of the Named Insured which may be imputed to the Additional Insured." *Cline*, 722 N.E.2d at 758; *Kraemer*, 699 N.E.2d at 1058. In *Kraemer*, the court suggested in dicta that because the allegations of the relevant pleadings alleged only the negligence of the additional insured, the policy did not provide coverage. Only where liability was imputed to the additional insured because of the negligence of the named insured would the additional insured be covered. *Kraemer*, 699 N.E.2d at 1062. In *Cline*, the court recognized that the *Kraemer* court's suggestion was only dicta, but decided to follow it nonetheless. *Cline*, 722 N.E.2d at 764. The *Cline* court held that the language of the above endorsement limited coverage to claims that were solely and specifically based on conduct of the named insured, for which the additional insured was held vicariously liable. *See id.* at 765-66.

Marathon distinguishes these cases by pointing out the differences in the additional insured language – most notably, the specific use of the word "imputed," which more clearly signals the legal doctrine of vicarious liability than the language in Heidenreich's policy. More on point, argues Marathon, are *American States Ins. Co. v. Liberty Mutual Ins. Co.*, 683 N.E.2d 510 (Ill. App. Ct. 1997), *Shell Oil Co. v. AC&S, Inc.*, 649 N.E.2d 946 (Ill. App. Ct. 1995), and *Sportmart, Inc. v. Daisy Mfg. Co.*, 645 N.E.2d 360 (Ill. App. Ct. 1994). These cases involved broader language. For instance, the certificate of insurance in *Shell Oil* provided: "Shell Oil, Bechtel Engineering and Sachs Electric are named as additional insureds as defined in the policy

with respect to claims arising from [the named insured's] operations at Shell Oil, Alky Unit, Roxana, Illinois." *Shell Oil*, 649 N.E.2d at 951. The contract between the subcontractor and Shell Oil contained the similar phrase "arising out of operations performed for [Shell Oil] by [the named insured]." *Id.* The court determined that the broad phrase "arising out of" should be interpreted as requiring a "but for" causation test. Thus, the policy covered any liability that would not have occurred, but for the operations of the named insured. *See id.* at 952. Similarly, in both *American States* and *Sportmart*, the Appellate Court of Illinois held that broad "arising out of" language in additional insured endorsements extended to cover any liability that would not have occurred, "but for" the conduct of the named insured. *See American States*, 683 N.E.2d at 513; *Sportmart*, 645 N.E.2d at 363.

Examining the factual allegations of both Howe's complaint and Marathon's third party complaint in the light most favorable to Marathon, the court is convinced that: 1) there are no facts alleged that would raise the possibility of Marathon being held liable for Heidenreich's negligence under a theory of vicarious liability, and 2) Heidenreich's conduct, by and through Howe, was a "but for" cause of the accident that is the subject of Howe's tort suit against Marathon. Thus, in a factual sense, Marathon is being held liable (at least in part) for the conduct of Heidenreich and its employees. In the legal sense of vicarious liability, however, Marathon is not being held liable for the conduct of Heidenreich. As a result, the outcome of this case will be determined by the interpretation of the phrase "only if they are liable for the conduct" in the additional insured endorsement.

The court finds that the cases cited by both parties are distinguishable. The cases cited by Great West involved policy language using the term "imputed." That term suggests the operation

7

of the legal doctrine of vicarious liability, thus making it unambiguous that coverage applies only where one party is held legally responsible for the conduct of another because of the parties' relationship.[4] In contrast, the endorsements in this case do not use the term "imputed," but rather use the phrase "liable for [the] conduct," making Marathon's interpretation a reasonable one – namely, that where one party's conduct factually leads to another's liability, the second party is being held "liable for the conduct" of the first. But that is not the only reasonable interpretation of the endorsement language. Unlike the cases cited by Marathon, the endorsements here do not use the broad "arising out of" language. Thus, "liable for the conduct" could also reasonably be interpreted to refer only to cases where one party is legally responsible for the conduct of the other under a vicarious liability theory.

Where, as here, language determining the scope of the duty to defend under an insurance contract is subject to more than one reasonable interpretation, that ambiguity is to be resolved in favor of the insured. *See Hurst-Rosche Engineers, Inc. v. Commercial Union Ins. Co.*, 51 F.3d 1336, 1342 (7th Cir. 1995). The facts alleged in the relevant pleadings, including both Howe's complaint and the third party complaint, give rise to the possibility that Marathon may be entitled to coverage under the additional insured endorsements.[5] Accordingly, Great West's motion to

---

[4] Black's Law Dictionary defines "imputed negligence" as the "[n]egligence of one person charged to another; negligence resulting from a party's special relationship with another party who is originally negligent . . . ." Black's Law Dictionary 1057 (7th ed. 1999). Thus, the use of the term "imputed" in the context of liability for negligent conduct strongly suggests that the parties intended to limit coverage to the situation described in the definition. In contrast, the phrase "liable for the conduct" does not clearly indicate this situation.

[5] Great West also argues that the CAL (auto) part of the policy does not provide Marathon coverage for this accident because Howe's complaint alleges only negligence pertaining to the maintenance of premises. As discussed above, however, the court may look to the third party complaint to determine if there is any potential factual basis for coverage. *Cline*, 722 N.E.2d at

8

dismiss is denied.[6]

## II. Motion to Strike Marathon's Affirmative Defenses

Great West has moved to strike all five of Marathon's affirmative defenses. The Federal Rules of Civil Procedure provide that, upon motion by a party or upon the court's own initiative, the court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored. *See Man Roland Inc. v. Quantum Color Corp.*, 57 F. Supp. 2d 576, 578 (N.D. Ill. 1999) (citing *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)). A motion to strike defenses as insufficient will be granted only if the defenses are "insufficient as a matter of law or present no questions of law or fact." *Id.* Moreover, the defenses will be stricken only if they are insufficient "on the face of the pleadings." *Heller*, 883 F.2d at 1294.

### *First Affirmative Defense*

Marathon's first affirmative defense alleges that certain exclusion provisions in the CAL and CGL parts of Heidenreich's liability policy are inapplicable. Marathon contends that Great West's complaint quoted incomplete portions of the exclusion provisions, making it appear as though the exclusion provisions precluded coverage. In its motion to strike this defense, Great West simply claims that the exclusion provisions at issue are irrelevant because neither the CAL

---

764; *West Bend*, 606 N.E.2d at 328. Hence, Marathon's allegation that Howe was negligent in the operation of the truck is sufficient to raise the possibility of coverage under the CAL part.

[6] Because the court finds the Illinois case law on this subject sufficient to guide its determination of the motion to dismiss, the court declines to consider the additional New York authority presented by Marathon.

nor the CGL provide coverage to Marathon as an additional insured, even if the exclusion provisions are ignored. Great West claims that Marathon is covered as an additional insured only if it is vicariously liable for Heidenreich's conduct. Essentially, the motion to strike this defense is an extension of the argument made in the motion to dismiss. Because the court has found the additional insured endorsement provisions ambiguous on that point, the applicability of the exclusion provisions discussed in the first affirmative defense may be relevant to a determination of coverage. Thus, Great West's motion to strike is denied as to the first affirmative defense.

*Second Affirmative Defense*

Marathon's second affirmative defense makes two separate assertions. First, Marathon alleges that applicable federal law requires Heidenreich, as an interstate motor carrier, to maintain a certain level of auto insurance coverage for the protection of the general public, including Marathon. Marathon argues that construing the auto liability portion of Heidenreich's policy narrowly, as Great West urges, may "frustrate the mandatory insurance coverage requirements of Federal law." (Def.'s Am. Answer at 13). Second, Marathon alleges that under applicable federal regulations, Heidenreich is vicariously liable for the negligent operation of its leased vehicle by the decedent Howe, and that "Great West is, therefore, liable to Marathon under the above-mentioned policy." (Def.'s Am. Answer at 13).

Great West argues that this defense should be stricken because it doesn't deal with coverage under the policy, and is therefore irrelevant to the determination of this case. The first part of this affirmative defense, however, does relate to the appropriate construction of the coverage terms of the policy, and is therefore relevant. Marathon's second argument, that Heidenreich is vicariously liable for Howe's conduct, is also relevant. Under the additional

10

insured endorsements, Marathon is covered for claims if it is "liable for the conduct" of Heidenreich. If Howe's conduct caused the accident, as Marathon alleges in its third party complaint, and if Marathon's interpretation of the additional insured endorsement is correct, then the fact that Heidenreich is vicariously liable for that conduct would be relevant to the extent of coverage. Great West's motion to strike is therefore denied as to Marathon's second affirmative defense.

### Third Affirmative Defense

Marathon's third affirmative defense, in its entirety, reads: "The Complaint fails to state a valid cause of action against Marathon." (Def.'s Am. Answer at 13). The defense of failure to state a claim may be raised as an affirmative defense in an answer, rather than as a motion. *See Codest Engineering v. Hyatt Int'l Corp.*, 954 F. Supp. 1224, 1231 (N.D. Ill. 1996). Nonetheless, the court may strike such a defense if it is merely a "bare bones, conclusory allegation" of failure to state a claim. *See id.; see also Flasza v. TNT Holland Motor Express, Inc.*, 155 F.R.D. 612, 614 (N.D. Ill. 1994). Marathon's third affirmative defense could not be more bare bones or conclusory. It does not notify Great West of any specific infirmities in the complaint. Thus, Great West's motion to strike is granted as to Marathon's third affirmative defense.

### Fourth and Fifth Affirmative Defenses

Marathon's fourth and fifth affirmative defenses assert that Marathon is entitled to reimbursement for its defense costs under the Supplementary Payments provisions of the CAL and CGL parts of Heidenreich's policy, respectively. Initially, Great West argued that these provisions were inapplicable. In its reply brief, however, Great West apparently falls back to the position that the Supplementary Payments provisions, even if applicable, are effective only if

11

Marathon is otherwise covered under the CAL and CGL. Because the court has determined that the policy is ambiguous and may cover Marathon for the defense and indemnification of Howe's underlying suit, Great West's argument is unpersuasive. Marathon may be entitled to coverage under the CAL and CGL, and therefore might also be entitled to supplementary payments. Great West's motion to strike is denied as to Marathon's fourth and fifth affirmative defenses.

## Conclusion

For the foregoing reasons, Great West's motion to dismiss is denied, and Great West's motion to strike is granted as to the third affirmative defense and denied as to the remaining affirmative defenses.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: January 25, 2001