# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | Michael T. Mason |
|---|---|---|---|
| **CASE NUMBER** | 99 C 3101 | **DATE** | 2/25/2003 |
| **CASE TITLE** | Great West Casualty Co. vs. Marathon Oil Co. et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Report and Recommendation is hereby submitted to Judge Gottschall recommending that defendant Marathon's fee petition [71-1] be granted in part and denied in part and plaintiff Great West's motion contesting the reasonableness of Marathon's fees [62-1] be granted in part and denied in part. Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. Fed.R.Civ.P.72(a). Failure to file objections with the District Court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the report and recommendation. *Lorentzen v. Andersen Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995). All matters relating to the referral of this case having been completed, the referral is closed and the case is returned to the assigned judge.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 4 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | FEB 26 2003 | |
| | Notified counsel by telephone. | | date docketed | 111 |
| | Docketing to mail notices. | | ODY docketing deputy initials | |
| | Mail AO 450 form. | | 2/25/2003 | |
| ✓ | Copy to judge/magistrate judge. | | date mailed notice | |
| KF | courtroom deputy's initials | Date/time received in central Clerk's Office | KF6 mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **GREAT WEST CASUALTY COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | No. 99 C 3101 |
| v. ) | |
| ) | Hon. Joan Gottschall |
| **MARATHON OIL COMPANY,** an Ohio ) | Mag. Judge Mason |
| corporation, and **JEROME J. HOWE,** ) | |
| Independent Administrator of the Estate ) | |
| of **PAUL J. HOWE,** Deceased, and ) | |
| **HEIDENREICH TRUCKING, INC.,** ) | |
| an Illinois corporation, ) | |
| ) | |
| **Defendants.** ) | |

DOCKETED
FEB 2 6 2003

## REPORT AND RECOMMENDATION

Michael T. Mason, United States Magistrate Judge:

On December 9, 2003, we issued a Report and Recommendation to the District Court on defendant/counterplaintiff Marathon Oil Company's ("Marathon") motion for a finding of contempt against plantiff/counterdefendant Great West Casualty Company ("Great West"), recommending that the District Court deny the motion. The recommendation was based on our conclusion that Great West had not breached any court order when it ceased contemporaneously paying Marathon's attorney's fees incurred in a related wrongful death action, No. 98 C 3707 (the "Howe case"). Instead of continuing to pay, Great West had filed a motion contesting the reasonableness of the fees submitted by Marathon, and Marathon had submitted its own petition to have its fees paid. The District Court referred these motions to us for Report and Recommendation ("R&R") as well; we informed the parties that we would issue such R&R separately from the one dealing with Marathon's motion for contempt. We now address the remaining two motions, and as we explain below, we recommend that the District Court grant in part and deny in part Marathon's fee petition and grant in part and deny in part

Great West's motion objecting to the reasonableness of the fees.

Although the relevant facts have been set forth in previous opinions, we will repeat some of them here to avoid any confusion. In 1997, an individual named Paul Howe was killed in an accident at a Marathon terminal while he was driving a truck as an employee of Heidenreich Trucking, Inc. ("Heidenreich"). Heidenreich was insured by Great West, and pursuant to a contract with Marathon, Heidenreich was required to defend and indemnify Marathon for any accidents or injuries to Heidenreich drivers that occurred on Marathon property, other than those due solely to Marathon's negligence. In order to fulfill its contractual duty, Heidenreich had Great West name Marathon as an additional insured under Heidenreich's policy with Great West.

Even prior to being formally sued by Howe's estate, Marathon requested that Great West defend it pursuant to the additional insured language of the Heidenreich policy. In 1998, after the Howe case was filed against Marathon and Marathon tendered defense of that case to Great West, Great West filed the present declaratory judgment action, seeking to have the Court determine whether it was responsible for defending Marathon. The District Court subsequently issued three different opinions regarding Great West's duties in this and the Howe matters. The crux of these decisions is that on June 15, 2001, the District Court found Great West to be legally obligated to defend Marathon in the Howe case. However, the District Court declined to find that Great West was also obligated to indemnify Marathon, holding that a decision regarding indemnification was to be left for the jury, since such a duty would not be triggered unless and until the jury found that Howe was at least partially responsible for the accident. After the June 15, 2001 decision, Great West engaged Marathon's attorneys to continue defending Marathon in the Howe case and also began to pay Marathon's attorneys'

bills, retroactive to March, 2001.[1] About a year later, in April, 2002, Great West stopped paying Marathon's bills on the ground that they were unreasonable, and filed this motion contesting the reasonableness of Marathon's submissions. Soon thereafter, Marathon filed a petition seeking to have Great West pay its billed and un-billed attorneys' fees and costs for the Howe case as well as for the instant declaratory judgment action.

Marathon's fee petition (and its opposition to Great West's motion contesting the fees) restates many of the arguments it made in its motion for an order of contempt against Great West. It basically argues that it is entitled to have Great West pay its fees because the District Court ordered it to do so, and because Great West has shown bad faith in stopping payment. In the petition, Marathon asks for reimbursement based on a number of different theories and for a variety of expenses: 1) legal fees and expenses it has incurred in defending itself in the Howe case (including fees incurred prior to the filing of that lawsuit), less the amount Great West has already paid; 2) legal fees and expenses incurred in defending itself in the present declaratory judgment action filed by Great West; 3) as-yet un-billed fees and expenses it has incurred in both of the lawsuits; 4) 5% annual interest on all amounts due and owing in both actions; 5) statutory interest in both actions pursuant to 815 ILCS 205/2; and 6) any other "taxable costs" allowed by 215 ILCS 5/155. In addition to objecting to the reasonableness of some of Marathon's legal fees in general, Great West also specifically objects to certain categories of payment and reimbursement Marathon seeks.

In deciding these motions, we really have to address two questions: 1) of the categories of fees and expenses that Marathon claims Great West should pay, to which is it legally

---

[1] Although Marathon's original memorandum in support of its motion for contempt states that Great West began paying Marathon's legal fees after the District Court's June, 2001 opinion was issued, in its reply brief, Marathon contends that Great West actually began making such payments voluntarily in March, 2001, after an intermediate ruling by the District Court that Heidenreich and Krystal had contractual duties to defend Marathon.

3

entitled?; and 2) are those fees reasonable?

*What Does Great West's Duty to Defend Require?*

Although we recommended that the District Court deny Marathon's motion to hold Great West in contempt, our recommendation merely reflected the fact that no court order or legal authority absolutely bound Great West to contemporaneously reimburse Marathon. That does not mean that there is no basis to now order Great West to begin reimbursing Marathon for at least some of the defense fees and costs it has incurred. While we understand that Great West objects to paying for any of Marathon's defense costs on the ground that some of the claimed fees are unreasonable, we cannot determine whether it also means to argue that it should not have to pay even reasonable fees (should we decide that it has a duty of contemporaneous payment) until the conclusion of its appeal of the District Court's order requiring it to defend Marathon. To the extent that it is making such an argument, we find that the pendency of an appeal is not enough to toll Great West's obligation to defend Marathon, and thus, it must provide a defense even though it may have a good faith belief that the District Court's ruling will be overturned on appeal. *See Alexander v. Chicago Park District*, 927 F.2d 1014, 1025 (7th Cir. 1991) (parties must obey court orders unless they are stayed pending appeal).

Next, we must decide whether Great West's duty to defend includes the requirement that it contemporaneously pay Marathon's reasonable costs and fees. We believe that it does. Although our R&R regarding Marathon's motion for contempt recognized that there is at least a question about whether Illinois law requires contemporaneous reimbursement under a duty to defend, we believe that the more well-reasoned position does find such a duty. As we explained, an insurer's duty to defend an insured may take two forms. First, an insurer may choose to hire its own counsel and oversee the insured's defense in all respects. *See, e.g. Thornton v. Paul*, 384 N.E.2d 335, 343 (Ill. 1979), *reversed on other grounds by Am. Family Mut.*

*Ins. Co. v. Savickas*, 739 N.E.2d 445 (Ill. 2000). Under such a scenario, the insurer would obviously pay the attorneys' bills as they arose. In situations where there is a possible conflict between the insurer and insured, the insurance company may allow the insured to select its own counsel to defend the action, with the insurer reimbursing the insured for all reasonable attorneys' fees. *Id.*

The instant situation resembles the second scenario in that when Great West was ordered to defend Marathon, it allowed Marathon's current counsel to continue its defense of the company, and even began paying the attorneys' bills, albeit under a reservation of rights should the District Court's determination be overturned on appeal. Although Great West has contested whether it has a duty to defend at all, it has never addressed the notion that such a duty, if valid, might require contemporaneous reimbursement, although it implicitly recognized the duty by paying Marathon's bills until it began disputing their accuracy and reasonableness. After reviewing the case law and the arguments of the parties, we find that Great West must contemporaneously reimburse Marathon for certain reasonable attorneys' fees and expenses. Exactly which fees and expenses that includes will be addressed below.

*Reimbursement for the Declaratory Judgment Action*

Marathon argues that because the District Court has ruled that Great West owes Marathon a duty to defend, and has also overruled several of Great West's motions to reconsider,[2] Great West's continued refusal to pay any of Marathon's attorneys' fees is "vexatious and unreasonable" pursuant to 215 ILCS 5/155. The statute provides, *inter alia*, that in any action by or against an insurance company in which the issue is the company's duty to pay pursuant to a policy, and it appears to the court that such action by the insurance company

---

[2] The District Court denied Great West's most recent motion to reconsider on January 30, 2003.

is vexatious and unreasonable, the court may allow as part of the taxable costs in the case reasonable attorneys' fees and costs, plus an additional amount not to exceed, *inter alia*, $25,000.00. Further, Marathon contends that the attorneys' fees and costs discussed in the statute should include those it incurred not only in defending the Howe case, but also those for the instant declaratory action as well. Great West argues that it cannot be found to have acted vexatiously where, as here, it filed a timely declaratory judgment action, it has a bona fide dispute regarding coverage that it intends to appeal to the Seventh Circuit,[3] and our December 9, 2002 R&R recommended that it not be found in contempt.

This is an unusual situation; we have not found any case law with entirely comparable facts. When an insurance company disputes coverage under a policy of insurance, it may protect itself from a finding of vexatiousness by either defending under a reservation of rights or filing an action for a declaration of no coverage. *Westchester Fire Ins. Co. v. G. Heileman Brewing Co., Inc.*, 747 N.E.2d 955, 964-65 (Ill.App. 2001) (internal citations omitted). If an insurer fails to take either of these steps, it may be found to have acted vexatiously, and pursuant to 215 ILCS 5/155, may be liable to pay attorneys' fees not only in the underlying lawsuit, but also for any declaratory judgment action brought by the insured. *See Estate of Price v. Universal Casualty Company*, 779 N.E.2d 384, 387 (Ill.App. 2002).

In this case, Great West did file a declaratory judgment action contesting coverage which, at least initially, shielded it from a finding of vexatiousness and shielded it from having to pay any of Marathon's attorneys' fees connected to the declaratory judgment action. *See Aetna Casualty and Surety Co. v. O'Rourke Bros., Inc.*, 776 N.E.2d 588, 598 (Ill.App. 2002).

---

[3] Great West notes that despite the fact that the District Court has denied its motions for reconsideration, it has never held that the arguments tendered were substantively unreasonable, only that in the first motion, Great West raised issues that it could have presented earlier, and in the second, Great West raised new law that was not binding on this Court.

What makes this case complicated is that Marathon's reason for asserting that Great West should have to pay for the declaratory action overlaps Great West's justification for stopping those payments. In essence, Marathon is arguing that Great West should reimburse it for declaratory work because it was vexatious and unreasonable for refusing to reimburse attorneys' bills that included declaratory work. This argument does not support a finding of vexatiousness and thus does not support Marathon's contention that Great West must pay for its defense of the declaratory action.

However, there is another way that Great West could be bound to pay Marathon for declaratory work. Marathon contends that Great West was vexatious and unreasonable because it ceased making all payments in April 2002, instead of limiting its protest only to those items in the attorneys' bills it found unreasonable.[4] While we agree that this course of action might have worked in theory, the actual dealings between the parties after Great West stopped making payments demonstrates that both sides are guilty of finger pointing and of trying to assign blame to the other for failing to assist in the determination of what reasonable attorneys' fees might be or how questions about particular bills or entries might be resolved. For example, although both parties discussed adhering to Local Rule 54.3, which sets forth a framework by which parties work together to resolve fee issues, Local Rule 54.3 was never adopted and each side blames the other for the failure. And although we ordered Marathon to fully respond to certain interrogatories of Great West related to the issue of fees, Great West contends (and at least some evidence shows), that Marathon failed to fully respond to every request. Given the gamesmanship both parties have displayed regarding this issue, we are hesitant to hold that

---

[4] Great West continually disputes the characterization that it refused to pay all of Marathon's fees by referring to an offer it made to settle the issue by paying $25,000 in fees at a time when Marathon's attorneys' fees were approximately $50,000. We find such allusion to settlement discussions (especially ones that did not bear fruit), to be improper and not relevant, and we will not consider this argument.

Great West's behavior was so unreasonable and vexatious as to warrant the penalty that it reimburse Marathon for its defense of the declaratory action.

Finally, we do not find that Great West's filing of two motions for reconsideration of the District Court's orders, nor its plan to appeal these decisions to the Seventh Circuit, constitutes unreasonable and vexatious behavior. The cases cited by Marathon concern insurers who refused outright to either defend their insureds or file a declaratory judgment action, not cases where the issue was the reasonableness of submitted attorneys' fees. As we noted above, Great West did file an action for declaratory judgment. Further, when the District Court held that Great West had a duty to defend Marathon, Great West did not immediately stop its payments even though it contested the District Court's findings. Instead, it continued to pay, albeit under a reservation of rights, while it pursued its first unsuccessful motion for reconsideration, eventually ceasing payment based on the reasonableness of the bills, not because it contested its duty to pay at all. For all these reasons, we find that an award to Marathon pursuant to 825 ILCS 5/155 is not appropriate.

*Determining Great West's Obligation to Pay Marathon's Attorneys' Fees and Costs*

In its motion contesting the reasonableness of Marathon's fees, Great West asks that we find that the attorneys' fees and costs Marathon has submitted for reimbursement are *per se* unreasonable and must be revised by Marathon. We disagree. Although there may be selected entries in the bills submitted by Marathon that warrant alteration, we do not find that certain of Marathon's attorneys' billing practices are unreasonable as a rule. Thus, we will address each of Great West's general objections to Marathon's bills to provide guiding principles for determining the amount Great West must pay.

Great West did not provide any specific item-by-item objections to Marathon's bills until it filed its sur-reply brief. At that time, it attached to its brief a copy of Marathon's attorneys' bills.

For each entry, it assigned a single letter which identified the entry as either (in Great West's belief), related to the Howe action, related to the declaratory judgment action, related to the so-called Krystal/Heidenreich contract action, had a mixed purpose, was unidentifiable as to purpose, or was generally excessive in the time spent. Great West did not provide additional explanation for its designations. To our knowledge, Marathon has not responded to this document, but we do note that in its answers to Great West's interrogatories regarding billing, which we compelled in August, 2002, it informed Great West that it had opened separate billing numbers for declaratory work and work on the underlying Howe case. Great West's objections indicate that it does not believe that certain entries in the bills actually do relate only to the Howe matter. We therefore recommend that the parties use the guiding principles we set out in this R&R to discuss and hopefully resolve Great West's objections to Marathon's bills.

As an initial matter, we must address the question of whether Great West may recoup any of the payments it previously made, on the ground that some of those payments may have been unreasonable. We find that they may not. Although Great West noted that it was paying Marathon's bills under protest and with a right of reimbursement should its duty to defend be overturned, it never indicated that it was also reserving the right to seek recoupment for bills it later contended were unreasonable.[5] Great West contends that pursuant to Local Rule 83.51.5, a lawyer's fee shall be reasonable, and thus, it is entitled to repayment of any fees it previously paid that were not reasonable. It cites to no cases supporting this proposition. Further, although it suggests that it was under duress to pay those bills it did because of business necessity, *i.e.*, it paid out of fear that Marathon would seek penalties against it, we find this

---

[5] Great West points to a July 3, 2001 letter from one of its claims supervisors in which he informed Marathon that although Great West would agree to pay Marathon's defense costs, it was doing so under protest and without waiving any policy defenses. Great West does not provide any authority for its implied contention that the right to recoup previously paid bills on the ground that it later finds them unreasonable to be a policy defense.

9

argument and the cases cited to be unavailing. Great West does not explain what changed to induce it to eventually cease making payments, which did result in Marathon's seeking of penalties. Further, Great West does not contend that it was duped into believing that the bills it was paying were reasonable, or explain why it paid some bills if it believed they were not reasonable. Thus, we recommend that the bills Great West has paid should be treated as "water under the bridge" for the purpose of analyzing its reasonableness objections.

Next, as we explained above, Great West does not have to pay for any work Marathon's attorneys undertook to defend the declaratory action, or for that matter, time spent on what Great West describes as the contract matter related to third-party defendants Krystal Gas and Heidenreich. To the extent Great West believes that certain items in the bills for work on the Howe case might in fact be for work on the declaratory judgment action or other Marathon work, the parties need to meet to discuss the discrepancies themselves before resorting to court intervention, as we described above.[6]

Great West also contends that Marathon's attorneys' bills are generally excessive because the lawyers spent too much time preparing Marathon's motion for summary judgment and on almost every other aspect of the case.[7] Other than Great West's notations on Marathon's bills that it believes certain entries represent excessive time, we do not have any evidence or legal authority to find that Marathon's attorneys over-billed it for any aspect of the

---

[6] For example, Great West argues that its deposition of Roger Heidenreich included questions related both to the Howe case and the instant declaratory case, and that it should not have to pay for the declaratory part. In response, Marathon contends that it asked Heidenreich only a single question related to the declaratory action and that it was Great West's attorneys who then asked a number of follow-up questions regarding the issue.

[7] The parties have conflicting views regarding the importance of the motion for summary judgment, which was filed but never ruled upon, since the parties settled the Howe case prior to decision. Marathon contends that it was its filing of the motion that convinced the Howe plaintiff to lower his settlement demand to a level that allowed the case to be settled. Great West on the other hand believes that it was its own advocacy that resulted in a favorable settlement, and that the time spent on the summary judgment motion, especially when the parties were already engaged in meaningful settlement discussions, was excessive.

10

case. And as Marathon points out, the best indication of whether an attorney's bills are reasonable is whether they are paid, especially in a situation such as this, where Marathon agreed to pay without any reassurance that it would be reimbursed by Great West. See *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 520 (7th Cir. 2000). Between the two motions before us here, and Marathon's earlier motion for contempt, the parties have addressed the reasonableness of Marathon's attorneys' fees three times, and Great West has never provided the Court with any specific information about why it believes the bills are generally excessive. Thus, we find this contention to be without merit.[8]

Similarly, Great West contends that the hourly rate charged by Marathon's attorneys is unreasonable because during the time Marathon's lead attorney was charging $194.00 per hour for Marathon work, and $225.00 per hour for other commercial litigation, he only charged $125.00 per hour for what he termed "simple slip and fall cases". Great West argues that slip and fall cases can often become complicated, and that the $125.00 rate is the best estimate of a reasonable rate for a personal injury action such as this one.

Given the evidence before us, we cannot determine whether the rates charged by Marathon's attorneys are reasonable. Of the cases we have found which set reasonable attorneys' fees, almost all look to the market rate, which is the "rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 519 (7th Cir. 1993) (citations omitted). Further, an "attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate. "*People Who Care v. Rockford Board of Education.*, 90

---

[8] Great West argues that Marathon has not cited any Seventh Circuit authority for the proposition that a line-by-line analysis of Marathon's fees is improper; we note that Great West has not cited any Seventh Circuit cases showing that it is proper either. Also, we note that Great West has not told the Court what it is paying its own attorneys, or made an argument that it was paying its counsel so much less that Marathon's fees must be excessive. Thus, we have no evidence before us that Marathon's fees are per se unreasonable.

11

F.3d 1307, 1310 (7th Cir. 1996) (citation omitted). We have not found any cases that specifically discuss the appropriate rate for lawyers handling a wrongful death suit, and none of the information provided by Marathon's attorneys concerns comparable rates for wrongful death cases. Thus, although Marathon's attorneys' billing rates do not

seem excessive to the Court, we are not in a position to determine a reasonable rate at this time. Marathon must provide evidence of the billing rates of other attorneys for wrongful death actions in federal court in order to show that its rates are reasonable.[9]

We also disagree with Great West that it was presumptively unreasonable for Marathon's attorneys to send two lawyers to cover depositions, court calls, and other appearances, especially when one was an associate who would presumably be performing the bulk of the case's research and writing. Although there may be certain instances in which a second attorney is not needed, we cannot tell from Great West's argument when these situations might have occurred. For example, although a simple status call may not require the presence of two lawyers, often, appearances in Court involve questions from the judge or argument that require the services of two attorneys. Given that Great West would have also paid its own attorneys for time spent on various matters, it is in the best position to identify for Marathon those time entries in which it believes that the situation called for only one lawyer. Again, the parties should attempt to work out this dispute on their own before submitting it to the Court for additional resolution.

*From What Date is Great West Responsible for Marathon's Bills?*

There are three possible dates from which to measure the onset of Great West's duty to pay Marathon's defense costs. The first, advocated by Marathon, is the date in 1997 when

---

[9] To assist in this endeavor, Great West must provide Marathon with the billing rates for its own attorneys in this matter, since those rates would be a good indication of reasonable fees.

12

it first informed Great West about the accident. The second is the date that Marathon informed Great West that the Howe estate had filed a lawsuit against it, and the third date is March, 2001, when, pursuant to a ruling by the District Court, Great West began to voluntarily reimburse Marathon's defense costs.

After reviewing the case law, we find that Great West's duty to defend commenced when it had notice of the lawsuit Howe filed against Marathon in 1998. Although Marathon contends that Great West's duty began when it first had notice of a potential claim under the policy, it can cite to no case law to support its position. Instead, it notes that in a District Court case applying Massachusetts law, the Court stated that an insurer could never be expected to fulfill a duty to defend prior to notice of a lawsuit or a claim. See American Mutual Liability Ins. Co. v. Beatrice Cos., 924 F.Supp. 861 (N.D.Ill. 1996). The case does not hold that mere notice of a claim automatically triggers an insurer's duty to defend, even in the absence of a lawsuit. Great West does cite to cases that hold an insurer's duty to defend does not begin with notice of a potential claim, but only upon the filing of a lawsuit. See, e.g., Fruit If the Loom, Inc. v. Travelers Indemnity Co., 672 N.E.2d 278 (1st Dist. 1996). We recognize that all of the cases cited by Great West concern an insurer's duty to defend various environmental claims, but in the absence of contrary authority, we hold that Great West's duty began when Marathon gave it notice of the Howe estate's lawsuit.[10]

In summary, we recommend that Great West must reimburse Marathon for the attorneys' fees it has incurred since it first gave Great West notice of the Howe lawsuit, minus the amount it has already paid, subject to the following principles, and with the understanding that the

---

[10] We reject any argument that Great West should only have to reimburse Marathon for those attorneys' fees that accrued from March, 2001 onward, when Great West actually began paying pursuant to an order of the District Court. Although Marathon did offer to waive its claim for past fees if the parties could settle the matter, such settlement was never reached, and the parties do not provide any arguments for or against making Great West liable to defend Marathon only from the date of the District Court's order.

parties must meet to discuss any specific objections of Great West to particular time entries: 1) Great West does not have to reimburse Marathon for attorneys' fees connected to defense of the instant declaratory judgment action or the contract action, and the parties should meet to discuss Great West's notations on Marathon's bills that indicate a belief that non-Howe work was billed to the Howe account; 2) the attendance at most events by two attorneys is not *per se* unreasonable, but Great West should identify and discuss with Marathon those instances where it has a good faith argument that only one lawyer was needed; 3) Great West must provide Marathon with the billing rates for its own attorneys and Marathon must produce evidence regarding reasonable rates for other lawyers defending wrongful death cases in Chicago, in order to determine if the hourly rates charged by Marathon's attorneys are reasonable; and 4) Great West does not have a right of recoupment against Marathon for sums already paid based on an argument that such sums were not reasonable.

*Pre-Judgment Interest on Marathon's Award*

We decline to award Marathon pre-judgment interest pursuant to 815 ILCS 205/2. Pursuant to the statute, a court has discretion to award pre-judgment interest in cases, *inter alia*, where there was a vexatious and unreasonable delay to payment. For the reasons we explained above, we decline to find that Great West has been vexatious and unreasonable, and thus an award of interest is not appropriate.

*Fees for Fees*

At the end of its reply brief, Marathon for the first time asks for an award of "fees for fees", that is, an award of attorneys' fees connected with the bringing of its fee petition. Neither party provides any justification for or against such an award, and we suppose the question to be resolved is whether Marathon's filing of a fee petition is properly considered part of its defense of the Howe case. The question is complicated by the fact that Marathon's fee petition

14

was only one of three the parties briefed on the issue of Great West's duty to reimburse Marathon. We have found no case law dealing with this issue, and thus recommend that Marathon submit a supplemental fee petition which sets forth not only the fees it expended filing its petition, but its justification for receiving such fees.

For the above reasons, we recommend that the District Court grant in part and deny in part Marathon's fee petition and grant in part and deny in part Great West's motion contesting the reasonableness of Marathon's fees. Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. Fed. R. Civ. P. 72(a). Failure to file objections with the District Court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the report and recommendation. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

**ENTER:**

MICHAEL T. MASON
United States Magistrate Judge

Dated:   February 25, 2003