DOCKETED
APR 4 - 2003
FILED
APR 03 2003
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

7279-9904

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GREAT WEST CASUALTY COMPANY, a Nebraska casualty company, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 99 C 3101 |
| MARATHON OIL COMPANY, an Ohio corporation, and JEROME J. HOWE, Independent Administrator of the Estate of PAUL J. HOWE, deceased, and HEIDENREICH TRUCKING, INC., an Illinois Corporation, | ) ) ) ) ) ) ) ) | Judge Gottschall<br><br>Magistrate Judge Mason |
| Defendants. | ) ) | |

## MOTION OF MARATHON OIL COMPANY FOR ATTORNEYS' FEES RELATING TO THIRD-PARTY ACTIONS

Defendant-counterplaintiff Marathon Oil Company ("Marathon"), pursuant to this Court's Order of March 21, 2003, moves this Court for the entry of an Order in its favor and against plaintiff-counterdefendant Great West Casualty Company ("Great West") awarding it its attorneys' fees and costs incurred in the filing and prosecution of its third-party actions against Heidenreich Trucking Company, Inc. ("Heidenreich") and Krystal Gas Marketing Company ("Krystal") in the case of Howe v. Marathon, Case No. 98 C 3707, now re-filed as Case No. 03 C 1440. In support of this Motion, Marathon states as follows:

1. On May 14, 1998, Marathon was sued by the legal representative of the Estate of Paul J. Howe, deceased, for damages due to the alleged wrongful death suffered by Paul J. Howe, a truck driver, who was fatally injured while at Marathon's terminal. Because the facts of the case are essentially not in dispute, and have been repeated numerous times in the course of both this

litigation and the Howe case, Marathon will not burden the Court with a further recitation of those facts in the instant Motion.

2. After having been sued by Mr. Howe, Marathon filed third-party actions against Heidenreich and Krystal based on separate written indemnity provisions. The indemnity provision as to Heidenreich was set forth in a Terminal Access Agreement between Heidenreich and Marathon, while that as to Krystal was found in a document entitled Reseller Product Sales Terms.

3. While the litigation between Marathon and Heidenreich and Krystal has not yet been concluded, Marathon was successful in prosecuting its third-party actions against said third-party defendants, when, on March 10, 2001, Judge Gottschall issued a written opinion in the Howe case finding that both Heidenreich and Krystal, pursuant to their respective contractual provisions with Marathon, had a duty to defend Marathon, but leaving undecided the issue of whether they also had a duty to indemnify Marathon for damages.

4. Thereafter, when the Howe case was settled as between the plaintiff and the defendant, for a total amount of $108,000, $33,000 was contributed to the settlement fund by St. Paul Reinsurance Company, Krystal's insurer. It is unclear how much Heidenreich contributed to the settlement, because the balance of the settlement amount was paid by Great West, which was both Marathon's insurer, under additional insurance, and Heidenreich's insurer, under primary insurance. Marathon has no knowledge if Great West ever apportioned its settlement payment of $75,000 among Marathon and Heidenreich.

5. On January 31, 2001, Judge Gottschall denied Great West's motion to dismiss Marathon's counterclaim in this action, and on June 15, 2001, Judge Gottschall ruled that under

the additional insured provision of its insurance policy with Heidenreich, Great West owed Marathon a duty to defend in the Howe case.

6. For approximately nine months in 2001, Great West paid Marathon's defense fees in the Howe case without objection, some of which fees were for the prosecution of the third-party actions at issue here. Then, in early 2002, Great West unilaterally and suddenly stopped paying Marathon's fees and costs, claiming that they were "unreasonable." Among the items raised by Great West in contesting Marathon's attorneys' fees and costs in the present dispute, is that Great West should not have to pay Marathon for fees and costs incurred in filing and prosecuting the third party actions against Heidenreich and Krystal, which Great West refers to as the "contract actions," and which will be referred to herein as the "third-party actions." This refusal to pay by Great West is the subject of the present Motion.

7. One of the difficulties with addressing Great West's objections to Marathon's fees and costs with respect to the third-party actions is that it is not clear in what capacity Great West paid Marathon's fees, and in what capacity it now contests those fees. For purposes of this Motion, however, Marathon will assume that Great West is acting solely in its capacity as insurer of Marathon under the additional insured provision of its insurance policy with Heidenreich, rather than in its capacity as Heidenreich's insurer. Marathon makes this assumption for two reasons: First, Great West has already paid and, subsequently, objected to paying, Marathon's fees and costs only as Great West, with no mention of the Marathon/Heidenreich indemnity agreement. Presumably, if the objections were being made by Great West in its capacity as Heidenreich's insurer, the objections should have been made in the name of Heidenreich by Heidenreich's separate counsel, Mr. Michael LaBarge. Second, on July 3, 2001, a few weeks after this Court's June 15 Order that Great West owed Marathon a duty to defend, Mr. Lee Vagts of Great West,

3

sent a letter to Marathon's counsel, said letter purporting to be a reservations of rights. In that letter, Mr. Vagts nowhere refers to Heidenreich or to the Terminal Access agreement between Heidenreich and Marathon. It only refers to the "policy." A true and correct copy of Mr. Vagts's letter is attached hereto as Exhibit A.

8. With respect to the law of duty to defend, however, the problem of Great West's dual capacity may not be an issue, because, as shown below, the law of reimbursement for third party actions as "costs of defense" is substantially the same, whether considered under principles of insurance law or contractual indemnity law. Under either analysis, Marathon is entitled to recover its fees and costs.

9. Under both insurance and contractual indemnity law, there are very few reported cases that deal with the issue of whether an insured or an indemnitee is entitled to recover, as "costs of defense," its costs and fees incurred in bringing third party actions. However, in the closely analogous situation of whether such a party can recover its fees and costs incurred in bringing and prosecuting a (noncompulsory) counterclaim, several cases from other jurisdictions are on point.

10. In <u>Safeguard Scientifics, Inc., et. al. v. Liberty Mutual Insurance, Inc.</u>, 766 F. Supp. 324, 333 (E.D. Pa., 1991), the court held that the defendant insurance company owed a duty of defense to its insured as to an action against the insured for, among other things, breach of contract, libel, slander, and defamation. In that suit, the insured filed a counterclaim alleging, among others things, breach of contract, breach of fiduciary duty, and fraud. In response to the insurer's contention that its duty to defend did not include the prosecution of the counterclaim, the court stated:

> Liberty Mutual has pointed to no case law suggesting that an insurance
> company's obligation does not extend to the litigation of counterclaims raised in

4

> the same lawsuit. The counterclaims were not compulsory under New York law.... However, the pursuit of the counterclaims was inextricably intertwined with the defense of Barnes' claims and was necessary to the defense of the litigation as a strategic matter. Thus, Liberty Mutual's duty to defend extends to the counterclaims raised in the same proceeding.

11. Similarly, in Tig Ins. Co. v. Nobel Learning Cmtys., Inc., 2002 U.S. Dist. LEXIS 10870 (E.D. Pa., Civ. Action No. 01-4708, 2002), following Safeguard Scientifics, the court noted that, "[a]lthough few courts have addressed the issue of an insurer's liability for affirmative claims by the insured, the courts that have found liability have done so where the claims were 'part of the same dispute' and could 'defeat or offset liability,' Safeguard, at 333-34; Citadel Holding Corp. v. Roven, 603 A.2d 818, 824 (Del. 1992)."

12. While no Illinois court has directly ruled on this point, at least one court in this State has considered this issue. In International Ins. Co. v. Rollprint Packaging Products, 312 Ill. App.3d 998, 1014-1015, 728 N.E.2d 680, 245 Ill. Dec. 598 (1st Dist., 2000), claims and counterclaims relating to misappropriation of trade secrets were filed. The Appellate Court, while ruling that the insurer owed a duty to defend to the insured with respect to the claims set forth in the complaint, also ruled that the duty to defend did not extend to the insured's filing and prosecution of a counterclaim. In so ruling, however, the Court noted that the counterclaim in question was "offensive" in nature and did not relate directly to the defense of the underlying action. As the court stated:

> International [the insurer] argues that Rollprint's counterclaim was "offensive" in nature because it sought to restrain Novissar from future use or disclosure of the trade secrets. International distinguishes this type of counterclaim from defensive counterclaims such as third-party contribution and indemnity actions which seek to limit liability of an insured.
> * * *
> This situation is different from that where a third-party action or counterclaim, such as for contribution, is filed to limit a defendant's potential liability.

5

13. Thus, by implication, the decision in <u>International</u> can be said to stand for the proposition that where a counterclaim or third-party action filed by an insured is defensive in nature, that is, where it involves issues of indemnity or contribution, and is filed to limit the defendant's potential liability, the insured is entitled to recover its fees and costs incurred in the prosecution thereof, as proper costs of defense. This is to be distinguished from situations where a counterclaim is offensive in nature, i.e., where it can stand alone as an independent claim and is unrelated to the issues in the complaint. Of course, in the instant case, it is beyond dispute that the third party actions, being actions for indemnity, were inextricably intertwined with, and entirely dependent on, the complaint and the issues raised therein. Therefore, they were clearly defensive in nature.

14. As to contractual indemnity law, in <u>Perchinsky v. State</u>, 660 N.Y.S.2d 177, 181, 232 App. Div. 34 (1997), leave to appeal dismissed in part and denied in part, 666 N.Y.S.2d 561, leave to appeal denied, 695 N.Y.S.2d 540, a plaintiff was injured while hanging wire in a state-owned armory building that had been leased to a local Lions Club for putting on a show that Granny "G" Productions had been hired to produce. Granny "G" in turn contracted with Todd's Kite World and Lemon Enterprises (the injured plaintiff's employer) to prepare the building for the show. While the plaintiff was hanging wire as part of the preparation, he was injured when a ladder that he borrowed from a state employee collapsed. As part of the contractual arrangements, the Lions Club had obtained an indemnity agreement from Granny "G," indemnifying it against all "claims, actions, damages and costs," including attorneys' fees.

In ruling on the question of whether, for purposes of the indemnity agreement, the Lions Club's defense costs included its costs and fees incurred in prosecuting third party actions, the Court stated as follows:

6

>Granny "G" argues that the Lions Club is not entitled to indemnification for the costs and counsel fees it incurred in prosecuting its third party actions against Kite World and Lemon Enterprises. We disagree and, in so doing, make a distinction between counsel fees incurred in pursuing the third party actions and those incurred by the Lions Club in pursuing its cross-claims against Granny "G."
>
>* * *
>
>Both Granny "G" and the Lions Club agree that the Lions Club could not recover for the expense of pursing its cross-claims against Granny "G." to enforce its contractual right of indemnification. The award against Granny "G," however, should include not only the costs of defending the main claim, but also the costs of pursuing the third-party actions because the filing of the third-party actions was an essential component of the defense of the main action, pursued in good faith and not contrary to the language of the contractual indemnity provision...To hold otherwise would deprive the indemnitee of the full benefit of the bargain it struck with the indemnitor.

15. Finally, to allow Marathon to recover its costs and fees incurred in prosecuting third-party actions is consistent with common sense. If, as held in Safeguard Scientifics and suggested in International Ins. Co., costs and fees can be awarded to an insured for prosecuting a defensive, non-compulsory counterclaim, which seeks to limit the liability of the insured, surely the same holding and considerations would apply to third-party actions which seek to bring more parties, and more money, into the case. As with the situation of a counterclaim, to the extent that a third-party action can bring in additional parties to share in the liability, the insurer/indemnitor, in this case Great West, would benefit by having the ultimate share of the liability for which it must pay, reduced.

16. As stated above, this is not merely a theoretical argument, because the situation described in the preceding paragraph actually happened in the instant case, where Marathon's third-party action against Krystal brought an additional $33,000 into the case that enabled it to get settled. This is money that would otherwise have had to have been paid by Great West, if the settlement would still have gone through. Of course, if the case

had not settled, Great West would have found itself facing the prospect of paying a potential liability in the millions of dollars, not to mention having had to pay for the expenses and costs of trial and possible appeal.

For the foregoing reasons, Marathon prays that this Motion be granted, and that it be allowed to recover from Great West its costs and fees incurred in the filing and prosecutions of its third-party actions against Krystal and Heidenreich.

_____
Attorney for Marathon Oil Company

Of Counsel:
TEEPLE & LEONARD
175 West Jackson Blvd.
Suite 240
Chicago, IL 60604
312/986-3222

### CERTIFICATE OF SERVICE

TO: Timothy J. Lowery, 333 W. Wacker Drive, Suite 420, Chicago, IL 60606

I, John L. Leonard, an attorney, certify that I caused a copy of the above **MOTION OF MARATHON OIL COMPANY FOR ATTORNEYS' FEES RELATING TO THIRD-PARTY ACTIONS** to be served upon the above listed party by facsimile, 312-460-8790 and by regular mail, proper postage prepaid, on April 3, 2003, before 4:00 p.m.

_____
John L. Leonard

8



**GREAT WEST**
  **Casualty Company**

*The Difference is Service®*

1100 West 29th Street • P.O. Box 277
South Sioux City, NE 68776-0277 • 402-494-2411

July 3, 2001

MR THOMAS D EVANS
MARATHON OIL COMPANY
PO BOX 1
FINDLAY OH 45839-0001

MR RONALD W PEEPLE
LAW OFFICES OF DEFREES & FISKE
200 SOUTH MICHIGAN AVE STE 1100
CHICAGO IL 60604-2480

RE:  Estate of Paul Howe vs. Marathon Oil
   O/File:    446649-L-193
   O/Insured: Heidenreich Trucking, Inc.
   D/Loss:    4/15/97

Gentlemen:

I am going to again remind you that any action taken by Great West Casualty Company pertaining to this matter is not considered a waiver of any rights under the policy. All policy defenses are specifically reserved and any action taken will be under a full reservation of rights. At this time, due to the recent court ruling, we are proceeding to pay one-half of Marathon's defense costs with Krystal Gas paying the remainder. Please be advised that this payment is based upon a reservation of rights, under protest, and that Great West Casualty Company reserves its right to recoup, if it is determined that there is no duty to defend.

A separate file has been set up and is being directed by Great West Casualty Company adjuster Lee Clabaugh.

Sincerely,
GREAT WEST CASUALTY COMPANY

Lee Vagts
Claims Supervisor
402-494-8556

DLV:jl3te/mca

WE CAN PROVIDE BETTER CUSTOMER SERVICE WHEN YOU REFER TO THE ABOVE F

EXHIBIT A