# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 3101 | **DATE** | 7/10/2003 |
| **CASE TITLE** | Great West Casualty Company vs. Marathon Oil Company, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Marathon Oil Co.'s motion for attorneys' fees relating to third-party actions [119-1] is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 11 2003 | |
| | Notified counsel by telephone. | | date docketed | 150 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| RT/en | courtroom deputy's initials | 03 JUL 10 PM 4:24 Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DOCKETED
JUL 1 1 2003

| | |
|---|---|
| GREAT WEST CASUALTY COMPANY, a Nebraska Casualty Company, <br><br> Plaintiff, <br><br> v. <br><br> MARATHON OIL COMPANY, an OH Corp., JEROME J. HOWE, Independent Administrator of the Estate of PAUL J. HOWE, Deceased, and HEIDENREICH TRUCKING, INC., an IL Corp., <br><br> Defendants. | Case No. 99 C 3101 <br><br> Honorable Judge Joan B. Gottschall |

## MEMORANDUM OPINION AND ORDER

The question before the court is whether Great West Casualty Co. ("Great West") must pay Marathon Oil Company's ("Marathon") attorneys' fees incurred in two third-party indemnification actions prosecuted by Marathon against Heidenreich Trucking Company, Inc. ("Heidenreich") and Krystal Gas Marketing Company ("Krystal").

*Background*

Decedent Paul Howe, a truck driver employed by Heidenreich, was fatally injured while loading his truck with gasoline purchased by or for Krystal at a Marathon terminal. Howe's estate brought suit against Marathon, claiming negligence in various respects, and Marathon filed third-party complaints against Heidenreich and Krystal for contribution and indemnity.

A terminal access agreement between Heidenreich and Marathon required Heidenreich to defend and indemnify Marathon for claims related to the presence of Heidenreich's drivers at Marathon's site, except for claims "arising solely out of [Marathon's] negligence." To meet this obligation, Heidenreich had its insurer, Great West, name Marathon as an "additional insured" on

150

Heidenreich's liability policy. Following the filing of Howe's wrongful death action, Great West filed a declaratory judgment action seeking a declaration that it had no duty to defend or indemnify Marathon in the wrongful death action. Marathon counterclaimed, seeking a declaration that Great West had a duty to defend and indemnify.

In an order of June 15, 2001, the court ruled that Great West has a duty to defend Marathon in the Howe litigation, but that until the trial jury decides whether Howe's conduct, and by imputation Heidenreich's, contributed to Howe's death, it cannot be determined whether Howe's accident arose solely out of Marathon's negligence or not and whether, accordingly, Great West has a duty to indemnify. The parties now dispute Great West's duty to pay the costs of Marathon's prosecution of its third-party indemnification and contribution actions against Heidenreich and Krystal.

*Discussion*

There is little authority bearing on this issue. The Illinois Supreme Court has not spoken to the issue, and the cases that the court and the parties have found are all distinguishable in some particular or another.[1] Nevertheless, the authority appears virtually uniform in holding that there is a class of affirmative claims which, if successful, have the effect of reducing or eliminating the

---

[1] It is possible that little pertinent authority exists because the circumstances of this case are unusual. Marathon is seeking, by its third-party actions, to shift some of its potential liability to Heidenreich and Krystal. If it were clear that Great West is obligated to indemnify Marathon, Great West would presumably be enthusiastically behind Marathon's third-party actions, since the success of those actions would reduce Great West's indemnification liability. There are two flies in this ointment in the particulars of this case, however. First, Great West vehemently disputes any indemnification obligation as to Marathon, and appears unreconciled to the court's decision that it has a duty to defend. Second, Marathon by one of its third-party actions, is seeking to shift part or all of its liability to Heidenreich, Great West's primary insured. So from Great West's point of view, it has nothing to gain by the success of Marathon's third-party actions and everything to lose.

2

insured's liability and that the costs and fees incurred in prosecuting such "defensive" claims are encompassed in an insurer's duty to defend.

The parties and the court have located only one Illinois case addressing the question of whether, when an insurer is obligated to defend an insured, the insurer is responsible for the costs of the insured's prosecution of related actions, *International Insurance Co. v. Rollprint Packaging Products, Inc.*, 728 N.E.2d 680 (Ill. App. Ct. 2000). In *Rollprint,* the insurer brought a declaratory judgment action seeking a declaration that it did not owe Rollprint a duty to defend and indemnify it in a federal employment discrimination lawsuit pursuant to a commercial general liability insurance policy. The trial court found, and the appellate court agreed, that the insurer's duty to defend was triggered by the allegations of the federal complaint. The underlying lawsuit dealt with the plaintiff's termination from Rollprint's employ, and in the course of defending the lawsuit, Rollprint counterclaimed, seeking a finding that it owned various trade secrets, the ownership of which the federal plaintiff's claim had put in issue. The court ruled that the insurer had no obligation to pay legal fees incurred in connection with this ownership of trade secrets counterclaim. Discussing cases from outside Illinois (due to lack of Illinois authority) which had held that an insurer which is obligated to defend is also obligated to provide coverage for certain counterclaims and cross-claims filed by the insured in the underlying action, the court noted that the insurer's duty with respect to affirmative claims brought by the insured depends upon whether such claims are "defensive" in nature, meaning "filed to limit a defendant's potential liability." *Id.* at 694. Such claims are encompassed by the duty to defend whereas offensive claims, such as Rollprint's suit for a declaration as to its

ownership of trade secrets, are not.

The distinction recognized in *Rollprint* appears to represent the general rule. In *Safeguard Scientifics, Inc. v. Liberty Mutual Ins. Co.*, 766 F. Supp. 324, 334 (E.D. Pa. 1991), *aff'd in part rev'd in part*, 961 F.2d 209 (3d Cir. 1192) (without reported opinion), the court ruled broadly that the insurer's duty to defend extended to the litigation of non-compulsory counterclaims "inextricably intertwined with the defense" of the covered claims. In *Oscar W. Larson Co. v. United Capitol Insurance Co.*, 845 F. Supp. 458, 461 (W.D. Mich.1993), cited in *Rollprint*, the court ruled that with respect to expenses relating to claims for affirmative relief, they are encompassed by the duty to defend if they "are expenses which are reasonable and necessary to limit or defeat liability." In *Tig Insurance Co. v. Nobel Learning Communities, Inc.*, 2002 WL 1340332, at *1 (E.D.Pa. June 18, 2002), Nobel sued Dr. Levy, the previous owner of its assets, seeking a declaration of the parties' respective intellectual property rights. Levy and his associated entities counterclaimed for copyright infringement. In holding that Nobel's insurer had a duty to defend its affirmative claims, the court employed the same analysis, stating, "Although few courts have addressed the issue of an insurer's liability for affirmative claims by the insured, the courts that have found liability have done so where the claims could 'defeat or offset liability.'" *Id.* at *14, quoting *Safeguard Scientific*, 766 F. Supp. at 333-34.

The issue was also discussed in *Perchinsky v. State of New York*, 660 N.Y.S.2d 177 (N.Y. App. Div. 1997). There, an employee of Lemon Enterprises, Inc. ("Lemon Enterprises") which had been hired by Todd's Kite World ("Kite World"), which in turn had been hired by Granny "G" Productions, Inc. ("Granny 'G'"), to decorate an armory for a Lions Club home show, fell

4

and was injured in the course of installing wiring. The employee sued the Lions Club and Granny "G," who in turn commenced third-party actions against Kite World and Lemon Enterprises for contribution and/or indemnity. Granny "G" had an indemnification agreement with the Lions Club, pursuant to which the Lions Club sought indemnification for the costs and counsel fees it incurred in pursuing its third-party actions against Kite World and Lemon Enterprises. The court, while noting that the Lions Club could not recover for the expense of enforcing its contractual right to indemnification against Granny "G," ruled that the Lions Club was entitled not only to its costs of defense in the main claim, but its costs in pursuing the third-party actions against Kite World and Lemon Enterprises "because the filing of the third-party actions was an essential component of the defense of the main action . . . ." *Id.* at 181.

Great West has attempted to distinguish each of these authorities, or to argue that it is not binding authority, but it has come forward with not a single case that supports its argument that the duty to defend does not encompass fees and costs incurred in counterclaims or third-party actions aimed at shifting liability for the claim as to which the duty to defend exists. "Defense" is about avoiding liability. Claims and actions seeking third-party contribution and indemnification are a means of avoiding liability just as clearly as is contesting the claims alleged to give rise to liability. A duty to defend would be nothing but a form of words if it did not encompass all litigation by the insured which could defeat its liability, including claims and actions for contribution and indemnification.

The court does not understand Marathon's argument regarding Supplementary Payments, and disregards it entirely.

Marathon's motion for attorneys' fees for third-party actions is granted.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: July 10, 2003